IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, <br><br> Plaintiffs, <br> v. <br><br> OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, TRACEE A. BEECROFT, SUSAN MANSANAREZ, and KEITH SNYDER <br><br> Defendants. | Civil Action No. _____ |

**ZURICH AMERICAN INSURANCE COMPANY AND AMERICAN GUARANTEE AND LIABILITY COMPANY'S
COMPLAINT FOR DECLARATORY JUDGMENT**

Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs Zurich American Insurance Company and American Guarantee and Liability Insurance Company file this Complaint for Declaratory Judgment, showing as follows:

**INTRODUCTION**

1.  Plaintiffs Zurich American Insurance Company and American Guarantee and Liability Insurance Company (collectively, "Zurich") seek a declaration that certain commercial general liability and umbrella policies issued by Zurich to Ocwen Financial Corporation and Ocwen Loan Servicing LLC (collectively "Ocwen") impose no obligation on Zurich to defend or indemnify Ocwen against claims asserted by members of the classes of plaintiffs defined in the purported class action styled *Keith Snyder, et al. v. Ocwen Loan Servicing; Tracee A. Beecroft v. Ocwen Loan Servicing*, Consolidated No. 1:14-cv-08461, pending in the Northern District of Illinois, or the individual claims asserted in that action (collectively, the "Underlying Action").

1

As set forth in further detail below, Zurich does not owe any duty to defend or indemnify because all claims in the Underlying Action either fall outside of the coverage of Zurich's policies or are barred by exclusions within those policies.

## PARTIES

2.  Zurich American Insurance Company is incorporated under the laws of the State of New York and is domiciled in Illinois. Its principal place of business is located at 1299 Zurich Way, Schaumburg, IL 60196.

3.  American Guarantee and Liability Insurance Company is incorporated under the laws of the State of New York and is domiciled in Illinois. Its principal place of business is located at 1299 Zurich Way, Schaumburg, IL 60196.

4.  Defendant Ocwen Financial Corporation is incorporated under the laws of the State of Delaware and is domiciled in Florida, with its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida. Ocwen Financial Corporation engages in the business of collecting debts in Illinois.

5.  Defendant Ocwen Loan Servicing, LLC is incorporated under the laws of the State of Delaware, and is domiciled in Florida, with its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida. Ocwen Loan Servicing, LLC engages in the business of collecting debts in Illinois.

6.  Defendant Keith Snyder is a natural person who resides in San Diego, California. Defendant Snyder has purposefully availed himself of this forum by filing the Underlying Action against Ocwen in the Northern District of Illinois, as detailed below.

7. Defendant Tracee A. Beecroft is a natural person who resides in New London, Minnesota. Defendant Beecroft purposefully availed herself of this forum by litigating the Underlying Action against Ocwen in the Northern District of Illinois, as detailed below.

8. Defendant Susan Mansanarez is a natural person who resides in Federal Way, Washington. Defendant Mansanarez has purposefully availed herself of this forum by filing the Underlying Action against Ocwen in the Northern District of Illinois, as detailed below.

## JURISDICTION AND VENUE

9. The subject matter jurisdiction of this Court is predicated on 28 U.S.C. § 1332. There exists complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b), as it is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred and where at least one defendant is subject to personal jurisdiction of this Court.

## THE ZURICH POLICIES

**A.     The Zurich CGL Policies**

11. Zurich American Insurance Company issued the following relevant commercial general liability policies to Ocwen:

| Policy No. | Policy Period |
|---|---|
| GLA6553581-01 | September 15, 2010 to September 15, 2011 |
| GLA6553581-02 | September 15, 2011 to September 15, 2012 |
| GLA6553581-03 | September 15, 2012 to September 15, 2013 |
| GLA6553581-04 | September 15, 2013 to September 20, 2014 |
| GLA6553581-05 | September 20, 2014 to September 20, 2015 |
| GLA6553581-06 | September 20, 2015 to September 20, 2016 |

True and accurate copies of these policies with their Declarations are attached hereto as Exhibits A – F. The policies in Exhibits A – F are collectively referenced herein as the "Zurich CGL Policies."

12. The Zurich CGL Policies provide multiple coverages, including coverage for "bodily injury" and "property damage" liability and "personal and advertising injury" liability. The limits of liability for "bodily injury" and "property damage" in each of the Zurich CGL Policies are $1,000,000 per occurrence, and $2,000,000 in the aggregate. The limits of liability for "personal and advertising injury" in each of the Zurich CGL Policies are $1,000,000 per claim, and $2,000,000 in the aggregate.

13. The scope of coverage for "bodily injury" and "property damage" is as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> …
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes places in the "coverage territory";

14. The scope of coverage for "personal and advertising injury" is as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

15. The Zurich CGL Policies provide the following applicable definitions:

4

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

B. **The AGLIC Umbrella Policies**

16. American Guarantee and Liability Insurance Company issued the following commercial umbrella liability policies to Ocwen:

| Policy No. | Policy Period |
|---|---|
| AUC5833066-00 | September 15, 2012 to September 15, 2013 |
| AUC5833066-01 | September 15, 2013 to September 20, 2014 |

5

| AUC5833066-02 | September 20, 2014 to September 20, 2015 |
| AUC5833066-03 | September 20, 2015 to September 20, 2016 |

True and accurate copies of these policies are attached hereto as Exhibits G through J. The policies at Exhibits G through J are collectively referred to herein as the "AGLIC Umbrella Policies."

17. The AGLIC Umbrella Policies offer multiple coverages, including Excess Follow Form Liability Insurance. This coverage provides:

>  A. Coverage A – Excess Follow Form Liability Insurance
>
> Under Coverage A, we will pay on behalf of the insured those damages covered by this insurance in excess of the total applicable limits of underlying insurance. With respect to Coverage A, this policy includes:
>
> 1. The terms of and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2 below; and
>
> 2. The terms and conditions that apply to Coverage A of this policy.

18. Coverage A of the AGLIC Umbrella Policies only applies, therefore, if coverage in one of the policies identified as "underlying insurance" is triggered.

19. The AGLIC Umbrella Policies each identify one of the Zurich CGL Policies as "underlying insurance," corresponding to their policy periods.

20. The AGLIC Umbrella Policies also offer Umbrella Liability Insurance Coverage. This coverage provides:

> B. Coverage B – Umbrella Liability Insurance
>
> Under Coverage B, we will pay on behalf of the insured, sums as damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, or

6

personal and advertising injury covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere. We will pay such damages in excess of the Retained Limit specific in Item 5. Of the Declarations or the amount payable by other insurance, whichever is greater. Coverage B will not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of insurance of underlying insurance.

21.     The limit of liability on each of the AGLIC Umbrella Policies is $25,000,000 in the aggregate.

## THE UNDERLYING ACTION

22.     The allegations at issue in the Underlying Action are set out in the consolidation of two separate purported class action lawsuits that have been filed against Ocwen.

### A.     The Snyder-Mansanarez Action

23.     On October 27, 2014, Snyder filed a lawsuit styled *Keith Snyder, et al. v. Ocwen Loan Servicing, LLC*, Case No. 1:14-cv-8461, in the Northern District of Illinois (the "Snyder-Mansanarez Action"). The current iteration of the Snyder-Mansanarez Action's complaint (the "Snyder-Mansanarez Complaint") sets out claims on behalf of Snyder, Mansanarez, and "all others similarly situated" against Ocwen for violations of the Telephone Consumer Protection Act (the "TCPA") and the Fair Debt Collection Practices Act (the "FDCPA"). A true and correct copy of the Snyder-Mansanarez Complaint is attached hereto as Exhibit K.

24.     Specifically, the complaint in the Snyder-Mansanarez Action (the "Snyder-Mansanarez Complaint") alleges that Ocwen's business involves using automated calling systems to call debtors in an attempt to collect on their debt. The Snyder-Mansanarez Complaint alleges that Ocwen used these automated calling systems to call both Snyder and Mansanarez on their cell phones repeatedly, even after both individuals asked Ocwen to stop. The Snyder-Mansanarez Complaint alleges that this conduct violates the TCPA, which prohibits the use of

7

automated dialing systems in the absence of an emergency or the prior express consent of the called party.

25. Further, the Snyder-Mansanarez Complaint alleges that Ocwen misrepresented the amount of the debt that Snyder owed, and attempted to collect on that debt after the applicable statute of limitations, thereby violating the FDCPA.

26. Finally, the Snyder-Mansanarez Complaint seeks to certify two classes. The first is described as the TCPA Class, and seeks to include:

> All persons in the United States to whom: (a) Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) through the use of an automatic telephone dialing system or an artificial or pre-recorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

27. The second class is described as the FDCPA class, and seeks to include:

> All persons in the United States from whom: (a) Defendant has collected or attempted to collect on a consumer debt that is no longer enforceable in a court action; (b) because it is past the statute of limitations under the applicable law of the state where the obligation was incurred; (c) at any time in the period that begins one year before the date of filing this Complaint to trial.

28. The Snyder-Mansanarez Complaint states claims for: (1) violations of the TCPA through the use of automated calling systems, without permission and for non-emergency purposes; (2) knowing and willful violations of the TCPA based upon the same conduct; and (3) violations of the FDCPA. All claims are asserted both individually and on behalf of the classes defined within the Snyder-Mansanarez Complaint.

29. As relief, the Snyder-Mansanarez Complaint seeks statutory damages under the TCPA and FDCPA, class certification, and injunctive relief.

B.     **The Beecroft Action**

30.    On January 15, 2015, Beecroft filed the lawsuit against Ocwen styled *Tracee A. Beecroft, et. al. v. Ocwen Loan Servicing, LLC*, 0:15-cv-00094, in the District of Minnesota (the "Beecroft Action").  The current iteration of the complaint in the Beecroft Action (the "Beecroft Complaint") sets out claims against Ocwen for violations of the TCPA, violations of the FDCPA, violations of the Fair Credit Reporting Act, and invasions of privacy and credit defamation.  A true and accurate copy of the Beecroft Complaint is attached hereto as Exhibit L.  As pled, Beecroft's claims are solely for violations of the TCPA.  The Beecroft Complaint states that the TCPA allegations are on behalf of Beecroft "and all others similarly situated."

31.    The Beecroft Complaint alleges that Ocwen used an automated calling system to repeatedly call Beecroft's cell phone regarding a debt that Beecroft allegedly owed, and that these calls continued even after Beecroft asked Ocwen to stop.  The Beecroft Complaint further alleges that Ocwen illegally accessed Beecroft's credit report, and reported inaccurate information onto that report to devalue it.

32.    The Beecroft Complaint seeks to certify the following class:

All persons nationwide who Ocwen (or some person on its behalf) called on their cell phone using the same equipment used to call plaintiff, where Ocwen's records do not indicate that it had permission to call, where any call was made between and including date four years prior to the filing of this Amended Complaint, ongoing.

Plaintiff alleges a subclass of persons whose phone numbers were obtained through a third party, such as a credit bureau (Experian) or skip trace service.

33.    The Beecroft Complaint sets forth claims for (1) violations of the Telephone Consumer Protection Act, which include class allegations (detailed above); (2) violations of the Fair Debt Collections Practices Act; (3) violations of the Fair Credit Reporting Act; (4) credit defamation; and (5) invasion of privacy by intrusion on seclusion.

9

34. On February 9, 2017, Beecroft moved to dismiss Counts II through V of her Complaint, leaving only the count for violation of the TCPA. A true and correct copy of Beecroft's stipulation of dismissal is attached hereto as Exhibit M.

35. As damages for Count I of the Beecroft Complaint, which is the only count that is still at issue, Beecroft seeks statutory damages under the TCPA, injunctive relief, and declaratory relief. Count I is asserted both on behalf of Beecroft individually and on behalf of the class defined in the Beecroft Complaint.

**C.  Underlying Action**

36. On September 28, 2016, Beecroft, Snyder, and Mansanarez filed a joint motion to have the Snyder-Mansanarez Action and the Beecroft Action, including all class allegations, consolidated in the Northern District of Illinois. This request was granted on September 28, 2016, and now the two actions are proceeding before Honorable Matthew Kennelly in the Northern District of Illinois under case number 1:16-cv-08677 (the "Consolidated Action"). The Consolidated Action incorporates all of the allegations of the Underlying Action, as defined above.

37. Ocwen provided notice to Zurich of the Underlying Action, including notice of numerous claims and/or lawsuits filed by individuals who are members of the plaintiff class as defined in the Underlying Action, and requested that Zurich provide defense and indemnification.

38. Upon review of these claims and lawsuits, however, Zurich determined that neither the Zurich CGL Policies nor the AGLIC Umbrella Policies (collectively, the "Zurich Policies") provided coverage for the Underlying Action.

39. Upon information and belief, Ocwen contests Zurich's coverage determination. Further, Ocwen has repeatedly demanded defense and indemnity for the Underlying Action from Zurich despite Ocwen's receipt of Zurich's coverage position.

40. Accordingly, an actual and justiciable controversy presently exists between Zurich and Ocwen with respect to whether Zurich has an obligation pursuant to the Zurich Policies to defend or indemnify Ocwen for the claims asserted in the Underlying Action. This substantial controversy, between parties having adverse legal interests, is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## COUNT I

**Declaratory Judgment that the Underlying Action Does Not Allege an "Occurrence" as Defined by the Zurich Policies**

41. Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

42. The Zurich Policies state that they only provide coverage for "bodily injury" or "property damage" if it is "caused by an 'occurrence.'"

43. The Underlying Action does not allege an "occurrence" as defined by the Zurich Policies.

44. Zurich, therefore, seeks a declaration that it has no duty to provide "bodily injury" or "property damage" coverage under the Zurich Policies for the Underlying Action because it does not allege an "occurrence."

## COUNT II

**Declaratory Judgment that the Underlying Action Does Not Seek Damages for "Bodily Injury" or "Property Damage"**

45. Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

46.     The Zurich CGL Policies' "bodily injury" and "property damage" coverage states that it only applies to "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'"

47.     Similarly, the AGLIC Umbrella Policies "bodily injury" and "property damage" coverage states that it only applies to "those damages the Insured becomes legally obligated to pay by reason of liability: 1. Imposed by law because of bodily injury, property damage,…; or 2. Assumed under an insured contract because of bodily injury or property damage."

48.     The Underlying Action does not seek any damages for "bodily injury" or "property damage."

49.     Zurich, therefore, seeks a declaration that it has no duty to provide "bodily injury" or "property damage" coverage under the Zurich Policies for the Underlying Action because it does not seek damages for "bodily injury" or "property damage."

## COUNT III

### Declaratory Judgment that the FDCPA Claims Do Not Allege Personal and Advertising Injury

50.     Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

51.     The Zurich CGL Policies' "personal and advertising injury" coverage states that it only provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."

52.     Similarly, the AGLIC Umbrella Policies "personal and advertising injury" coverage states that it only applies to "those damages the Insured becomes legally obligated to pay by reason of liability: 1. Imposed by law because of … personal and advertising injury."

53. The FDCPA Claims in the Underlying Action do not allege "personal and advertising injury" as defined by the Zurich Policies.

54. Zurich, therefore, seeks a declaration that it has no duty to provide "personal and advertising injury" coverage for the FDCPA claims in the Underlying Action because these claims do not allege "personal and advertising injury."

## COUNT IV

### Declaratory Judgment that Coverage for the Underlying Action is Barred by the Zurich Policies' "Violation of Statutes" Exclusion

55. Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

56. The Zurich Policies expressly exclude coverage for "bodily injury", "property damage", or "personal and advertising injury" that is "directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate":

> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
> (2) The CAN-SPAM Act of 2003, including any amendment or addition to such law;
>
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
>
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

("Violation of Statutes Exclusion").[1]

57. The claims alleged in the Underlying Action fall within the Violation of Statutes Exclusion because they all arise out of actions that allegedly violate the TCPA and/or other laws that "addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information."

58. Zurich, therefore, seeks a declaration that it has no duty to provide defense or indemnity for the claims asserted in the Underlying Action under the Zurich Policies' because the allegations fall within the Zurich Policies' Violation of Statutes Exclusion.

## COUNT V

**Declaratory Judgment that Coverage for All Claims is Barred under Certain Zurich CGL Policies by those Policies' "Violation of Communication or Information Law" Exclusion**

59. Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

60. Certain of the Zurich CGL Policies contain the following exclusion:

This insurance does not apply to:

Violation of Communication or Information Law

"Bodily injury", "property damage" or "personal and advertising injury" resulting from or arising out of any actual or alleged violation of:

A. the federal Telephone Consumer Protection Act (47 U.S.C. § 227), Drivers Privacy Protection Act (18 U.S.C. § 2721 – 2725) or Controlling the Assault of Non-Solicited Pornography and Marketing Act (15 U.S.C. § 7701, et seq.); or

---

[1] The "Violation of Statutes Exclusion" in the earliest of the Zurich CGL Policies—policy no. GLA655358101 and policy no. GLA655358102—uses slightly different language. *See* Ex. A and Ex. B. However, this slight variation in language is not material to this dispute.

  B. any other federal, state or local statute, regulation or ordinance that imposes liability for the:

    (1) Unlawful use of telephone, electronic mail, internet, computer, facsimile machine or other communication or transmission device; or

    (2) Unlawful use, collection dissemination, disclosure or re-disclosure of personal information in any manner by any insured or on behalf of any insured.

(the "Violation of Communication or Information Law Exclusion").

  61. The claims alleged in the Underlying Action fall within the Violation of Communication or Information Law Exclusion because they all arise out of actions that allegedly violate the TCPA and/or other laws described in the exclusion.

  62. Zurich, therefore, seeks a declaration that it has no duty to provide defense or indemnity for the claims asserted in the Underlying Action under the Zurich CGL Policies that contain the Violation of Communication or Information Law Exclusion and, by implication, under Coverage A of the AGLIC Umbrella Policies, because the allegations fall within the Zurich CGL Policies' Violation of Communication or Information Law Exclusion.

## COUNT VI

### Declaratory Judgment that Coverage for All Claims is Barred by the Zurich Policies' "Financial Services Exclusion"

  63. Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

  64. The Zurich CGL Policies contain the following exclusion:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others. For the purpose of this exclusion, financial services include but are not limited to:
>
> …

      4.    …acting as an assignee for the benefit of creditors;

      5.    Checking or reporting of credit;…

(the "Financial Services Exclusion")

65.    The claims alleged in the Underlying Action fall within the Financial Services Exclusion because they all arise out of Ocwen's alleged actions "as an assignee for the benefit of creditors" and/or its "checking or reporting of credit."

66.    Zurich, therefore, seeks a declaration that it has no duty to provide a defense or indemnity for the claims asserted in the Underlying Action under the Zurich CGL Policies and, by implication, under Coverage A of the AGLIC Umbrella Policies, because the allegations fall within the Zurich CGL Policies' Financial Services Exclusion.

## COUNT VII

**Declaratory Judgment that Coverage for All Claims is Barred by the Zurich Policies' Knowing Violations Exclusion**

67.    Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

68.    The Zurich Policies contain the following exclusion:

This insurance does not apply to:

a.    Knowing Violation of Rights of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

(the "Knowing Violation Exclusion").

69.    The claims alleged in the Underlying Action fall within the Knowing Violation Exclusion because the Underlying Action alleges that Ocwen acted with the knowledge that its conduct would violate the rights of Snyder, Beecroft, Mansanarez, and the other members of the TCPA and FDCPA Classes (collectively, the "Underlying Plaintiffs").

70. Zurich, therefore, seeks a declaration that it has no duty to provide defense or indemnity for the claims asserted in the Underlying Action because the allegations fall within the Zurich Policies' Knowing Violation Exclusion.

## COUNT VIII

### Declaratory Judgment that Coverage for Certain Claims is Barred by the Zurich Policies' Material Published with Knowledge of Falsity Exclusion

71. Zurich incorporates by reference each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

72. The Zurich Policies contain the following exclusion:

> This insurance does not apply to:
>
> …
>
> b.   Material Published with Knowledge of Falsity
>
> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

73. Certain claims alleged in the Underlying Action fall within this exclusion. Specifically, by way of example but not by way of limitation, the Underlying Action alleges that Ocwen published false information on Beecroft's credit report with the knowledge that it was false.

74. Zurich, therefore, seeks a declaration that it has no duty to provide defense or indemnity for any claims asserted in the Underlying Action that fall within the Zurich Policies' Exclusion for Material Published with Knowledge of Falsity.

**PRAYER FOR RELIEF**

WHEREFORE, Zurich respectfully requests that judgment be entered in its favor as follows:

1. That the Court declare that the Zurich Policies do not obligate Zurich to defend or indemnify Ocwen in the Underlying Action;

2. A jury trial on all issues so triable; and

3. For such other and further equitable or other relief as this Court deems just and proper.

This 17th day of April, 2017.

                                        Respectfully submitted,

                                        ZURICH AMERICAN INSURANCE COMPANY
                                        and AMERICAN GUARANTEE AND LIABILITY
                                        INSURANCE COMPANY

                                  By:    /s/ Anders C. Wick
                                        One of their Attorneys

Anders C. Wick (6274319)
Shannon Y. Shin (6301996)
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
(312) 876-8000
anders.wick@dentons.com
shannon.shin@dentons.com