**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING, LLC, TRACEE A. BEECROFT, SUSAN MANSANAREZ, and KEITH SNYDER, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:17-cv-02873 <br><br> Honorable Charles P. Kocoras |

**DEFENDANTS OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC'S BRIEF IN RESPONSE TO ZURICH AMERICAN INSURANCE COMPANY AND AMERICAN GUARANTEE AND LIABILITY COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Kevin B. Dreher
REED SMITH LLP
South Wacker Drive
40th Floor
Chicago, IL 60606-7507
kdreher@reedsmith.com

Timothy P. Law
Admitted *Pro Hac Vice*
REED SMITH LLP
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, Pennsylvania 19103
tplaw@reedsmith.com

*Attorneys for Defendants/Counterclaimants*
*Ocwen Financial Corporation and Ocwen Loan*
*Servicing, LLC*

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................ 1

II. The Undisputed Facts ....................................................................................... 2

    A. The CGL Policy ....................................................................................... 2

    B. The Umbrella Policy ............................................................................... 2

    C. The Underlying Action ........................................................................... 3

III. Legal Argument .............................................................................................. 4

    A. Because at Least One Claim in the Underlying Action Fell Within the Insuring Agreement, the Burden Shifts to Zurich to Prove That Exclusions Barred Any Possibility of Coverage. ....................................................... 4

    B. Zurich Failed to Meet Its Burden To Prove That the Underlying Action Fell Completely within Exclusions to Coverage. ..................................... 6

        1. Conflicting TCPA Exclusions in the CGL Policy Create an Ambiguity Warranting Interpretation in Favor of Coverage ................... 6

        2. The TCPA Exclusions Do Not Apply to Conduct That Does Not Violate the TCPA. ........................................................................... 9

        3. The Knowing Violation Exclusion Does Not Eliminate Coverage for the Underlying Action. ............................................................... 12

        4. The Financial Services Exclusion Does Not Eliminate Coverage for the Underlying Action. ............................................................... 14

IV. Conclusion ..................................................................................................... 14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Addison Automatics, Inc. v. Hartford Casualty Insurance Co.,
No. 13-cv-1922, 2015 WL 1543216 (N.D. Ill. Mar. 31, 2015) ...............................................11

American Standard Insurance Co. v. Allstate Insurance Co.,
569 N.E.2d 162 (Ill. App. Ct. 1991) ...........................................................................................8

Fayezi v. Illinois Casualty Co.,
58 N.E.3d 830 (Ill. App. Ct. 2016) ...........................................................................................12

GM Sign, Inc. v. State Farm Fire and Casualty Co.,
18 N.E.3d 70 (Ill. App. Ct. 2014) .........................................................................................9, 11

Illinois Casualty Co. v. West Dundee China Palace Restaurant Inc.,
49 N.E.3d 420 (Ill. App. Ct. 2015) ...........................................................................................12

Panfil v. Nautilus Insurance Co.,
799 F.3d 716 (7th Cir. 2015) ...........................................................................................4, 7, 8

Pekin Insurance Co. v. Wilson,
930 N.E.2d 1011 (Ill. 2010) ......................................................................................................13

Pekin Insurance Co. v. XData Solutions, Inc.,
958 N.E.2d 397 (Ill. App. Ct. 2011) ...........................................................................................5

Pekin Insurance Co. v. Equilon Enterprises LLC,
980 N.E.2d 1139 (Ill. App. Ct. 2012) .........................................................................................8

State Farm Fire and Casualty Co. v. Leverton,
683 N.E.2d 476 (Ill. App. Ct. 1997) .........................................................................................13

Tews Funeral Home, Inc. v. Ohio Casualty Insurance Co.,
832 F.2d 1037 (7th Cir. 1987) ..................................................................................................13

Title Industry Assurance Co. v. First American Title Insurance Co.,
853 F.3d 876 (7th Cir. 2017) .......................................................................................................5

United States Fidelity and Guaranty Co. v. Wilkin Insulation Co.,
578 N.E.2d 926 (Ill. 1991) ...........................................................................................................5

Valley Forge Insurance Co. v. Swiderski Electronics., Inc.,
860 N.E.2d 307 (Ill. 2006) ...........................................................................................................5

**Statutes**

47 U.S.C. § 227 .......................................................................................................................10

47 U.S.C. § 227(b)(1)(B) ........................................................................................................10

## I.  __INTRODUCTION__

The parties have filed cross-motions for judgment on the pleadings regarding the duty of Zurich American Insurance Company and American Guarantee and Liability Company (collectively, "Zurich") to defend Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (collectively, "Ocwen") in consolidated litigation (the "Underlying Action").  In its Motion, Zurich recasts the allegations of the Underlying Action into "four categories of conduct,"[1] which is an artifice.  This Court must look to the actual allegations, not to Zurich's characterization of them.  The CGL Policy covers bodily injury in Coverage A and personal injury offenses in Coverage B.  In the Underlying Action, there were clear allegations of bodily injury (*e.g.*, miscarriage) and covered offenses (defamation, disparagement, and invasion of privacy).

Zurich implicitly concedes injury and offenses within the insuring agreements.[2]  Zurich primarily relies on three policy exclusions in seeking to avoid its duty to defend.  Two fundamental principles of Illinois law are fatal to Zurich's motion.  First, if *any* claims potentially fall within coverage, Zurich was required to defend the *entire* Underlying Action. The policy does not exclude emotional distress severe enough to cause a miscarriage, repeated calls to a *home* telephone, and *mailed* letters and billings, as well as defamation and disparagement of Ms. Beecroft's credit reputation.  Excluded allegations do not foreclose a duty to defend if there is even one potentially covered allegation.  Second, Illinois law provides that conflicting endorsements and exclusions create an ambiguity warranting interpretation in favor of coverage.  Zurich sold an insurance policy with three conflicting versions of a TCPA exclusion, so the version that most favors coverage must be applied.

---

[1] Zurich Br. at 6.
[2] Zurich argues only that the Debt Misrepresentation allegations in the Snyder Complaint are excluded, which has no effect on the duty to defend the allegations of bodily injury, defamation, disparagement, and invasion of privacy made in the Beecroft action.

## II.    THE UNDISPUTED FACTS[3]

### A.    The CGL Policy

Zurich sold Commercial General Liability Policy No. CPO 6553581-04 (the "CGL Policy") to Ocwen for the period September 15, 2013 to September 20, 2014. Ocwen has focused on that policy period because Ms. Beecroft's miscarriage allegedly took place on December 5, 2013. In addition, Ms. Beecroft alleged that Ocwen began reporting her loan to the credit bureaus on October 1, 2013. Furthermore, the letters, billing statements, and repeated calls allegedly began shortly after Ocwen obtained the loan for servicing "on or about" September 1, 2013 continuing until September 16, 2014.[4] Coverage A applies to "bodily injury" liability, while Coverage B applies to liability for the publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, or that violates a person's right of privacy."[5]

### B.    The Umbrella Policy

American Guarantee and Liability Insurance Company issued Zurich Commercial Umbrella Policy No. AUC 5833066-01 (the "Umbrella Policy") to Ocwen for the period September 15, 2013 to September 20, 2014. Coverage B of the Umbrella Policy provides umbrella coverage which obligates Zurich to defend Ocwen when damages are sought for bodily injury, property damage, or personal and advertising injury to which no underlying insurance or other insurance applies.[6] If the CGL Policy does not cover the Underlying Action, but the Umbrella Policy does, then Zurich should have provided a defense under Coverage B of the

---

[3] Ocwen incorporates by reference its Statement of Undisputed Facts set forth in Ocwen's Brief in Support of Motion for Partial Judgement on the Pleadings. (Doc. No. 53).

[4] The original and First Amended Complaint alleged September 1, 2013. The allegation shifted to "on or about" April 1, 2013 in the Second Amended Complaint. JA-249, 251, ¶¶ 18, 27). Two of the dates on which Ocwen allegedly obtained Ms. Beecroft's Experian credit report, in violation of her right of privacy also were during the policy period (October 25, 2013 and April 18, 2014). JA-251, ¶ 30).

[5] JA-88.

[6] JA-138.

Umbrella Policy. The Umbrella Policy does not contain the Financial Services Exclusion found in the CGL Policy, thereby providing broader coverage.

### C. The Underlying Action

On or about January 15, 2015, Tracee A. Beecroft filed a lawsuit against Ocwen, alleging three counts: (1) Violations of the Fair Debt Collection Practices Act ("FDCPA"); (2) Violations of the TCPA; and (3) Invasion of Privacy by Intrusion Upon Seclusion (the "Beecroft Complaint").[7] The Beecroft Complaint sought damages for emotional distress suffered as a result of Ocwen's alleged invasions of privacy.[8]

Three months later, on March 13, 2015, Ms. Beecroft filed a First Amended Complaint (the "FAC"),[9] which added counts for Violations of the Fair Credit Reporting Act ("FCRA") and Credit Defamation and made a new factual allegation of bodily injury: a miscarriage suffered by Ms. Beecroft allegedly caused by emotional distress arising out of invasion of privacy.[10] The FAC alleged that a prior ultrasound showed a viable and healthy pregnancy, but the stress, and other negative emotions, caused by Ocwen's phone calls and attempts to collect the alleged debt were a significant contributor to her miscarriage.[11] In her prayer for relief, Ms. Beecroft asked for, among other things, an award of actual damages for the emotional distress suffered as a result of invasions of privacy and credit defamation.[12]

Ms. Beecroft alleged that Ocwen made calls not only to her cellular telephone, but also to her home telephone, and sent harassing letters and billings to her home.[13] The calls to her home

---

[7] JA-194-99.
[8] JA-197, ¶ 95.
[9] JA-202-225.
[10] JA-216-224.
[11] JA-205, ¶ 18.
[12] JA-224.
[13] JA-204, ¶ 14.

and the mailed letters and billings were not alleged to violate the TCPA. The FAC alleged that
Ocwen made "additional calls to Plaintiff's home in an attempt to collect a Loan that Plaintiff
had discharged in bankruptcy, despite Plaintiff telling Defendant Ocwen to stop calling."[14] The
FAC also alleged that Ocwen published false and derogatory information about Ms. Beecroft to
credit bureaus, particularly that she owed $157,832.00 as a past due balance on a mortgage loan,
despite it being discharged in bankruptcy.[15] Ms. Beecroft alleged that the inaccurate information
caused her embarrassment and frustration, and interfered with her relationships and standing
with her creditors.[16] The new claim for Credit Defamation alleged that Ocwen's "false
communications, acts and omissions resulted in the defamation of [Ms. Beecroft] and harmed her
credit reputation."[17]

Ms. Beecroft filed a Second Amended Complaint on June 6, 2015, which was brought as
a putative class action on behalf of herself and all others similarly situated (the "SAC").[18] The
SAC added an allegation that Ms. Beecroft was denied an application for a home mortgage as a
result of the "incorrect credit information provided by Ocwen to the credit bureaus."[19]

III.   **LEGAL ARGUMENT**

    A.   **Because at Least One Claim in the Underlying Action Fell Within the Insuring Agreement, the Burden Shifts to Zurich to Prove That Exclusions Barred Any Possibility of Coverage.**

Zurich fails to recognize the well-established principle in this jurisdiction (and others)
that "the bar to finding a duty to defend is low." Panfil v. Nautilus Ins. Co., 799 F.3d 716, 722
(7th Cir. 2015). Under Illinois law, an insurance company is required to defend a lawsuit if, in

---

[14] JA-222, ¶ 127.
[15] JA-204, ¶ 15.
[16] JA-206, ¶ 25.
[17] JA-220, ¶ 119, ¶120.
[18] JA-246.
[19] JA-250, ¶ 26.

comparing the four corners of the complaint to the four corners of the insurance policy, the lawsuit may ***potentially*** come within the coverage of the policy. Valley Forge Ins. Co. v. Swiderski Elecs., Inc., 860 N.E.2d 307, 314-15 (Ill. 2006). Even if only *one* of several theories of recovery alleged in the complaint falls within the potential coverage of the policy, the insurance company must defend its insured. Id. at 315. Further, in evaluating coverage, the complaint's factual allegations are liberally construed in favor of coverage. United States Fid. & Guar. Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991). Then, if there is any doubt as to whether the facts alleged establish the existence of a duty to defend, that doubt must be resolved in favor of the policyholder. Pekin Ins. Co. v. XData Sols., Inc., 958 N.E.2d 397, 400 (Ill. App. Ct. 2011). "The presence of a theory excluded from coverage simply does not excuse an insurer from its duty to defend its insured . . . ***just one path toward a covered claim would have been enough to trigger the duty to defend***." Title Ind. Ass. Co. v. First Am. Title Ins. Co., 853 F.3d 876, 886-87 (7th Cir. 2017) (emphasis added).

Zurich implicitly concedes that the allegations of the Underlying Action fall within Coverage A and Coverage B of the CGL Policy. Zurich contends only that the Debt Misrepresentation allegations in the Snyder litigation fail to satisfy the insuring agreements (see Zurich Br. at 7). Otherwise, Zurich focuses exclusively on three exclusions to coverage: the so-called "Violation of Law" Exclusion (which is the first of three versions of a TCPA exclusion in the CGL Policy), the Knowing Violation Exclusion, and the Financial Services Exclusion.

Ms. Beecroft sought damages for bodily injury (in particular, emotional distress culminating in a miscarriage) as well as invasion of privacy, disparagement, and defamation. Zurich downplays the allegation of miscarriage, failing to mention the word until page 17 of its Memorandum of Law. Then, when addressed, Zurich marginalizes the miscarriage allegation as

merely "add[ing] color to Beecroft's claim."[20]  That is not a fair reading of the Underlying

Action.  For example, Zurich incorrectly states that the Underlying Action does not "mention the

miscarriage in any of its counts or prayers for relief,"[21]  but the miscarriage was specifically

alleged in Count V for invasion of privacy:

> As a result of Defendant's invasions of Plaintiff's privacy, the Plaintiff suffered
> emotional distress, including stress, anxiety and frustration, amount [*sic*, among]
> other emotions.  Ultimately, plaintiff suffered a miscarriage during the eighth
> week of an otherwise healthy pregnancy.[22]

A miscarriage is not mere "color"; it is bodily injury covered under Coverage A and also under

Coverage B, which covers consequential bodily injury caused by the offense of invasion of

privacy.  The miscarriage allegation cannot be ignored.  Invasion of privacy was alleged as an

independent count of the Complaint.[23]  That invasion of privacy caused emotional distress and a

miscarriage, according to the Underlying Action.  This is not a close call.

**B.      Zurich Failed to Meet Its Burden To Prove That the Underlying Action Fell
Completely within Exclusions to Coverage.**

**1.      Conflicting TCPA Exclusions in the CGL Policy Create an Ambiguity
Warranting Interpretation in Favor of Coverage**

In the CGL Policy, there are three different versions of the TCPA exclusion: (1) the

Recording and Distribution of Material or Information in Violation of Law exclusion, which

Zurich renames the "Violation of Law Exclusion"; [24] (2) the Violation Of Communication Or

Information Law Exclusion ("TCPA Exclusion #2" );[25] and (3) EXCLUSION- VIOLATION OF

STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF

---

[20] Zurich Br. at 20-21.
[21] Zurich Br. at 20.
[22] JA-274, ¶ 148.
[23] JA-88.
[24] JA-36-37.
[25] JA-91.

SENDING MATERIAL OR INFORMATION ("TCPA Exclusion #3").[26]  None of these exclusionary endorsements is numbered or dated.

The Violation of Law Exclusion cited by Zurich bars coverage for bodily injury or personal and advertising injury directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate the TCPA, FCRA, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, use of, sending, transmitting, communicating, or distribution of material or information.  TCPA Exclusion #2 excludes bodily injury or personal and advertising injury resulting from or arising out of any actual or alleged violation of the TCPA or any other federal, state, or local statute, regulation or ordinance that imposes similar liabilities.  TCPA Exclusion #3 excludes bodily injury or personal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate the TCPA and any statute, ordinance or regulation other than the TCPA that prohibits similar conduct.  Zurich cherry picks the Violation of Law exclusion, seeking to apply the broadest possible exclusionary language in an effort to exclude common law claims like invasion of privacy and credit defamation, even though they are based on different factual allegations than the TCPA claims.  Illinois law commands the opposite approach, that only the narrowest of the three exclusions may be applied.

Conflicts between endorsements or exclusions that create an ambiguity must be interpreted in whatever manner favors coverage.  See Panfil v. Nautilus Ins. Co., 799 F.3d 716, 721-22 (7th Cir. 2015).  In Panfil, the Seventh Circuit held that the policy's Contractor-Subcontracted Work Endorsement (excluding coverage for subcontractors except for work

---

[26] JA-118.

performed "specifically and solely" for the insured) conflicted with the policy's Employee

Exclusion (excluding coverage for employees, including employees of subcontractors

"performing duties related to the conduct of any insured's business"), so the court construed the

conflicting provisions in a way that maximized coverage.  Id. at 720.  The Seventh Circuit

reasoned that "[w]hat the policy gives in one exclusion, it takes away in the next.  The two

provisions conflict, so there is an ambiguity which is resolved in favor of [the policyholder]."  Id.

at 721.

Similarly, in Pekin Insurance Co. v. Equilon Enterprises LLC, the court found an

"inherent contradiction" because "two endorsements when read together are ambiguous" and

accordingly construed the endorsements in favor of the additional insured (Shell).  980 N.E.2d

1139, 1148-49 (Ill. App. Ct. 2012).  Shell was an additional insured by way of two

endorsements.  The first endorsement provided additional insured status to Shell "only with

respect to [its] liability as grantor of a franchise to you."  Id. at 1142.  The second endorsement

provided additional insured status to Shell "only with respect to liability arising out of your

operations and premises owned by or rented by you."  Id.  The court recognized that "[i]f the first

endorsement limited coverage to only instances of negligence in granting a franchise, it would

render meaningless the coverage provided by the second endorsement" and accordingly

construed the language in favor of coverage.  Id. at 1144-45; see also Am. Standard Ins. Co. v.

Allstate Ins. Co., 569 N.E.2d 162, 166-67 (Ill. App. Ct. 1991) (conflicting exclusions should be

interpreted in favor of coverage).

Here, applying Illinois law, the three TCPA exclusions are contradictory and should be

construed in Ocwen's favor.  The essence of the conflict between the exclusions is whether they

apply to common law liabilities, as well as to statutory and regulatory ones.  The express terms

of TCPA Exclusion #2 apply to bodily injury or personal and advertising injury resulting from or arising out of any actual or alleged violation of particular, identified statutes:  the TCPA, Drivers Privacy Protection Act, Controlling the Assault of Non-Solicited Pornography and Marketing Act or "any other federal, state or local *statute, regulation or ordinance*" (emphasis added) that meets certain qualifications.  Here, while there are TCPA claims that would have been excluded by any of these versions of the exclusion,[27] Ms. Beecroft's claims for credit defamation and invasion of privacy are common law claims (not made under any statute, regulation or ordinance) and, therefore, fall outside and are not excluded by TCPA Exclusion #2.

The conflicting TCPA exclusions cannot extend to the claims for invasion of privacy or credit defamation.  The narrowest TCPA exclusion is TCPA Exclusion #2.  That exclusion plainly applies only to claims under statutes, regulations or ordinances.  Invasion of privacy and credit defamation are common law claims (not claims under statutes, regulations, or ordinances), and therefore cannot be excluded.

### 2. The TCPA Exclusions Do Not Apply to Conduct That Does Not Violate the TCPA.

Zurich argues that GM Sign, Inc. v. State Farm Fire and Casualty Co. and its progeny stand for the proposition that coverage is excluded where the underlying plaintiff would not have been injured "but for" the policyholder's alleged TCPA violations.[28]  Ms. Beecroft makes factual allegations of miscarriage, credit defamation, and invasions of privacy beyond the conduct that allegedly violated the TCPA.

Zurich attempts to create the impression that the only factual basis of the invasion of privacy claim are calls allegedly placed by Ocwen to Ms. Beecroft's ***cellular*** telephone,

---

[27] Ocwen contends that Zurich has waived or is estopped from denying such coverage by virtue of its breach of its duty to defend, particularly as it was done without reasonable basis, but that is beyond the scope of this motion.
[28] See Zurich Br. at 11-12.  GM Sign, Inc. v. State Farm Fire & Cas. Co., 18 N.E.3d 70 (Ill. App. Ct. 2014).

allegedly in violation of the TCPA. When crafting its four "categories of conduct," Zurich defined "telephone calls" as calls to "cell phones."[29] Zurich repeats that error throughout its brief, claiming that the alleged telephone calls comprising the invasion of privacy claim *all* are alleged to violate the TCPA. This characterization, however, is belied by the unambiguous allegations in the Underlying Action.[30] Count V for Invasion of Privacy by Intrusion on Seclusion alleged that Ocwen and its agents negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting a debt, thereby invading and intruding upon Plaintiff's right to privacy, including "***additional calls to Plaintiff's home phone*** in an attempt to collect a Loan that Plaintiff had discharged in bankruptcy, despite the Plaintiff telling Defendant Ocwen to stop calling."[31] The Underlying Action further alleged that Ocwen's collection efforts included "***letters, billing statements and repeated robocalls to*** Plaintiff's cellular and ***home telephones.***"[32]

Calls to a home telephone violate the TCPA only if they use an artificial or prerecorded voice to deliver a message without the prior consent of the called party, subject to certain exceptions (see 47 U.S.C. § 227(b)(1)(B)). The Underlying Action does not allege that Ocwen used an artificial or prerecorded voice to call Ms. Beecroft's home telephone. Rather, it alleges that real, live "operators" made the calls.[33] In addition, the TCPA does not address the use of postal service to send letters or mailings, see generally 47 U.S.C. § 227. The invasion of privacy claim is based in part, therefore, on conduct that is not alleged to violate the TCPA. No version of the TCPA exclusion in the CGL Policy or Umbrella Policy reaches conduct not alleged to

---

[29] Zurich Br. at 6.
[30] See, e.g., Zurich Br. at 18 ("The Invasion of Privacy claim . . . is based upon Ocwen's Telephone Calls, which violate the TCPA"); see also Zurich Br. at 20 ("[The 'unrelenting phone calls' are the same calls upon which Beecroft bases her TCPA claim.").
[31] JA-273, ¶ 144 (emphasis added).
[32] JA-249, ¶ 16 (emphasis added).
[33] JA-205, ¶ 17; JA-249-50, ¶ 20.

violate the TCPA. Therefore, the Underlying Action included allegations of invasion of privacy based on facts that are not violations of the TCPA. Likewise, the credit defamation claim exists independently from any cell phone calls and is based on the alleged false reporting of a debt.

In contrast, in <u>GM Sign</u>, all liability was based on allegations that the policyholder faxed advertisements to members of the plaintiff class without their permission in violation of the TCPA. 18 N.E.3d 70 (Ill. App. Ct. 2014). The complaint's counts for conversion and Consumer Act violations were not premised on facts different than those supporting the TCPA count. <u>Id.</u> at 78-79. The policyholder settled with the plaintiff class, which was defined as "'all persons to whom [the policyholder] sent advertising facsimiles during the period of September 7, 2007 through June 17, 2008'" and the plaintiffs agreed to satisfy the judgment solely by pursuing the insurance carrier, seeking leave to file an amended complaint "the admitted purpose of which was to 'plead into possible insurance coverage available under [the policyholder]'s insurance policies.'" <u>Id.</u> at 74-75. The court found that the plaintiff, who both controlled the complaint and was seeking coverage, was deliberately and strategically leaving its complaint bereft of factual allegations, rendering "meaningless a court's duty to compare the 'facts' alleged in the complaint to the relevant policy language." <u>Id.</u> at 79.[34] The court reasoned that "[i]n essence, [the plaintiff] was attempting to re-characterize, at the eleventh hour, the class action that it had already litigated and negotiated to settlement, for purposes of obtaining insurance coverage. This is not a strategy that courts should condone." <u>Id.</u> at 83. There are no similar facts in the present case.

---

[34] <u>See also</u> <u>Addison Automatics, Inc. v. Hartford Cas. Ins. Co.</u>, No. 13-cv-1922, 2015 WL 1543216, at *7-*8 (N.D. Ill. Mar. 31, 2015) (following <u>G.M. Sign</u> and rejecting argument that coverage existed despite violation of statute exclusion because conversion claim was based on unsolicited faxes that were not alleged to contain advertisements).

Likewise, in <u>Fayezi v. Illinois Casualty Co.</u>, the causes of action for conversion and TCPA and Consumer Act violations in the underlying complaint were all based on the same set of facts. 58 N.E.3d 830, 845 (Ill. App. Ct. 2016). Specifically, the court reasoned that the conversion and Consumer Act claims "do not attempt to allege any other particular offending conduct other than the sending of unsolicited fax advertisements on or about March 31, 2006, the very same conduct underlying count I for violation of the TCPA." <u>Id.</u> at 846; <u>see also</u> <u>Ill. Cas. Co. v. West Dundee China Palace Rest., Inc.</u>, 49 N.E.3d 420, 426 (Ill. App. Ct. 2015).[35]

In contrast, the Underlying Action alleged not just calls to a cell phone, but also calls to a home phone, mailed letters, and mailed billing statements that are outside the scope of the TCPA. Moreover, Ms. Beecroft alleged defamation and disparagement, claiming damage to her reputation with creditors. Such alleged harm is not addressed or covered by the TCPA. Most importantly, Ms. Beecroft alleged not just statutory damages under the TCPA, but "emotional distress, including stress, anxiety and frustration" causing a miscarriage during the eight week of an otherwise healthy pregnancy.[36] There is no precedent supporting application of a TCPA exclusion to allegations of a miscarriage, or to claims for invasion of privacy and credit defamation. Those claims are fundamentally distinct from the TCPA allegations.

### 3.    The Knowing Violation Exclusion Does Not Eliminate Coverage for the Underlying Action.

Zurich argues that the Knowing Violation exclusion bars coverage for the credit defamation claim (but, notably, not for the invasion of privacy claim) because "malice or willful intent to injure" is an element of a credit defamation claim under Minnesota law.[37] Coverage B of the CGL Policy expressly provides coverage for intentional torts, and the Seventh Circuit has

---

[35] JA-249, ¶ 16 (emphasis added).
[36] JA-274, ¶ 148 (emphasis added).
[37] Zurich Br. at 21-22.

held specifically that an allegation of intentionality does not prevent the duty to defend.  See
Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co., 832 F.2d 1037, 1045 (7th Cir. 1987) (rejecting
insurer's argument that underlying complaint's allegations of intentional conduct were excluded
on grounds that personal and advertising injury coverage expressly covers intentional torts).

Further, Zurich's argument ignores that, in support of the credit defamation claim, the
Underlying Action alleges not only intentional conduct (that Ocwen knew the loan had been
discharged in bankruptcy), but also negligent conduct (that Ocwen ***should have known*** the loan
had been discharged in bankruptcy).[38]  In an attempt to shoehorn all the factual allegations into
the Knowing Violation exclusion, Zurich glosses over the actual allegations, which are that
Ocwen knew or, alternatively, "***should have known***"[39] that Ms. Beecroft was not liable for the
loan.[40]  To the extent liability was based on information that Ocwen "should have known," rather
than information it knew, then the Knowing Violation exclusion is inapplicable.

What matters for the purposes of the duty to defend is what the pleadings allege, not
whether those allegations have merit.  See Pekin Ins. Co. v. Wilson, 930 N.E.2d 1011, 1017 (Ill.
2010) ("If the facts alleged in the underlying complaint fall within, or potentially within, the
policy's coverage, the insurer's duty to defend arises."); State Farm Fire & Cas. Co. v. Leverton,
683 N.E.2d 476, 479 (Ill. App. Ct. 1997) (The duty to defend is triggered even where the
underlying claim is "legally groundless, false or fraudulent.").[41]  Thus, Zurich's argument that
"should have known" allegations would not be sufficient to state a claim for credit defamation

---

[38] JA-271, ¶ 136.
[39] JA-271, ¶ 136.
[40] See Zurich Br. at 21.
[41] Regardless of what Minnesota law requires for a viable credit defamation claim, the Underlying Action's credit
defamation claim alleged both negligent and intentional conduct, putting the claim outside the ambit of the Knowing
Violation exclusion.  If the credit defamation claim was meritless as pled, Zurich was still responsible for paying the
lawyers to get the claim dismissed.  Indeed, policyholders need their insurance companies to defend meritless
claims, as well as those that have merit.

under Minnesota law is irrelevant to the duty to defend. Even if Zurich is correct that the credit

defamation allegations did not state a valid claim, Zurich was obligated to pay counsel to defend

Ocwen in the Underlying Action to achieve a dismissal of that legally groundless claim. Zurich

breached its duty to defend by abandoning Ocwen to fend for itself.

### 4. The Financial Services Exclusion Does Not Eliminate Coverage for the Underlying Action.

Zurich's argument that the Financial Services Exclusion bars coverage for the credit

defamation claim is of no moment because the Underlying Action alleged conduct aside from

credit defamation. Specifically, the invasion of privacy claim alleged facts beyond the "checking

or reporting of credit," such as invasion of privacy, creating a duty to defend under the CGL

Policy.[42] Perhaps more to the point, the Umbrella Policy does not contain a Financial Services

Exclusion, so even if the Financial Services Exclusion applied, Zurich would simply have owed

a defense under the Umbrella Policy instead of under the CGL Policy.[43]

## IV. CONCLUSION

Zurich's motion for partial judgment on the pleadings should be denied because Ocwen

has established that the Underling Action falls within the insuring agreement of the policies and

Zurich has failed to prove any exclusion eliminates all potential coverage. If Ocwen were found

liable for an invasion of privacy based, at least in part, on conduct that did not violate the TCPA

(such as calls to Ms. Beecroft's home telephone and letters and billings sent to her home),

coverage would not be excluded by any version of the TCPA exclusion, but particularly not

TCPA Exclusion #2, which can apply to only statutory and regulatory causes of action. If

Ocwen were found liable for causing emotional distress and a miscarriage (as alleged in the

Underlying Action), there would be bodily injury liability coverage. If Ocwen were liable for

---

[42] JA-273, ¶ 144.
[43] JA-135-82.

credit defamation based on facts that it did not know, but should have known (as alleged in the Underlying Action), the Knowing Violation exclusion would not apply and coverage would exist for that claim also.

Thus, the Underlying Action provides not just one path toward a covered claim, but several paths. As a result, Zurich's duty to defend was triggered, and Zurich breached that duty by declining coverage and refusing to assume Ocwen's defense. Respectfully, Ocwen requests that the Court enter judgment in Ocwen's favor on Counts 1 and 2 of Ocwen's Counterclaim for breach of contract (as to the duty to defend), and enter judgment in Ocwen's favor on Counts 1 through 7 of Zurich's Complaint.

Dated: November 30, 2017

REED SMITH LLP

By: /s/ Kevin B. Dreher
    Kevin B. Dreher
    South Wacker Drive
    40th Floor
    Chicago, IL 60606-7507
    kdreher@reedsmith.com

    Timothy P. Law
    Admitted *Pro Hac Vice*
    Three Logan Square
    Suite 3100
    1717 Arch Street
    Philadelphia, Pennsylvania 19103
    tplaw@reedsmith.com

    *Attorneys for*
    *Defendants/Counterclaimants Ocwen*
    *Financial Corporation and Ocwen Loan*
    *Servicing, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin B. Dreher, an attorney, hereby certify that on November 30, 2017, the foregoing Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC's Brief in Response to Zurich American Insurance Company and American Guarantee and Liability Company's Motion for Judgment on the Pleadings was filed electronically, using the ECF system, which will send notification of such filing to all parties of record in the above-captioned matter.

By: /s/ Kevin B. Dreher
Kevin B. Dreher
REED SMITH LLP
South Wacker Drive
40th Floor
Chicago, IL 60606-7507
kdreher@reedsmith.com

*Attorneys for*
*Defendants/Counterclaimants Ocwen*
*Financial Corporation and Ocwen Loan*
*Servicing, LLC*